## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**MEGAN ESTAY and FRANCESCA MESSORE,**
**individually and as a representative of a class**
**of participants and beneficiaries on behalf of the**
**Ochsner Clinic Foundation 401(K) Plan,**

Civil Action No. _____

                        **Plaintiffs,**                        **CLASS ACTION**

**v.**

**OCHSNER CLINIC FOUNDATION,**
**RETIREMENT BENEFITS COMMITTEE, and**
**DOES 1 to 10 inclusive,**

    **Defendants.**

## PLAINTIFFS' CLASS ACTION COMPLAINT

1.     Plaintiffs, Megan Estay and Francesca Messore (together, "Plaintiffs"), individually

and as representatives of a class of participants and beneficiaries of the Ochsner Clinic Foundation

401(k) Plan (the "Plan") bring this Employee Retirement Income Security Act of 1974

("ERISA")[1] action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) and Rule 23 of the

Federal Rules of Civil Procedure against Defendants, Ochsner Clinic Foundation ("Ochsner"), and

the Retirement Benefits Committee (the "Committee") (together, "Defendants"), for (1) breach of

ERISA's fiduciary duties; and (2) engaging in self-dealing and transactions prohibited by ERISA.

2.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so

with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the

documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of

---

[1] 29 U.S.C. §§1001–1461.

1

the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law." *Bussian v. RJR Nabisco, Inc*., 223 F.3d 286, 294 (5th Cir. 2000) *(quoting Donovan v. Bierwirth*, 680 F.2d 263, 271, 272 n.8 (2d Cir. 1982)). These duties require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan*, *supra*, 680 F.2d at 271.

3.    Instead of loyally and prudently acting in the best interest of Plan participants, Defendants chose to use Plan assets almost exclusively to benefit Ochsner, to the detriment of the Plan and its participants, by using millions of dollars of Plan assets to offset Ochsner's obligations to make contributions to the Plan.

4.    To remedy these fiduciary breaches and ERISA violations, Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the Plan, bring this action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. §1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty and to restore to the Plans any profits made through Defendants' use of the Plan's assets. In addition, Plaintiffs seek such other equitable or remedial relief for the Plan as the Court may deem appropriate.

## JURISDICTION AND VENUE

5.    This Court has exclusive subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

6.    This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

7.      Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.

## PARTIES

8.      The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34) that covers eligible employees of Ochsner and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1103(a).

9.      Plaintiff Megan Estay is a citizen of the State of Louisiana, is currently employed by Ochsner since May 2018, and has been a participant in the Plan during the class period. As such, she is a participant under ERISA § 3(7), 29 U.S.C. § 1002(7).

10.      Plaintiff Francesa Messore is a citizen of the State of Louisiana, was previously employed by Ochsner until 2019, and was a participant in the Plan during the class period. As such, she is a participant under ERISA § 3(7), 29 U.S.C. § 1002(7).

11.      During the class period, Plaintiffs' individual accounts were charged, and Plaintiffs paid, for a share of the Plan's administrative expenses.

12.      Plaintiffs have Article III standing to bring this action on behalf of the Plan because they suffered actual injuries through the misallocation of Plan assets by Defendants with regard to the Plan as it relates to their individual 401(k) accounts. This injury is fairly traceable to Defendants' unlawful conduct in using Plan assets for their own benefit and this harm is likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiffs and to the class.

13.      Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

14.     The Plaintiffs and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misallocation of Plan assets in the form of forfeitures) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

15.     Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of how Plan forfeitures should be allocated by the Defendants and also lacked actual knowledge of how Plan forfeitures were used by the Defendants.

16.     Ochsner is a Louisiana-incorporated company with its principal place of business at 1514 Jefferson Hwy., BH 543, New Orleans, LA 70121-2429.

17.     Ochsner is the Plan sponsor under 29 U.S.C. § 1002(16)(B) and the Committee is the Plan Administrator under 29 U.S.C. § 1002(16)(A) with broad authority over the administration and management of the Plan.

18.     The Committee was created by Ochsner to assist in the management of the Plan and was delegated with authority to, among other things, direct the trustee with respect to crediting and distribution of the Plan assets.

19.     Ochsner and the Committee are both named fiduciaries of the Plan and each exercised discretionary authority and discretionary control over the management and administration of the Plan with respect to the matters alleged herein and were fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A). Hereafter, a person or group of people who exercise authority or control of Plan assets will be referred to as a "Plan Fiduciary" or "Plan Fiduciaries."

20.     The defendants sued by the fictitious names DOES 1 through 10, inclusive, are Plan Fiduciaries unknown to Plaintiffs who exercise or exercised discretionary authority or

discretionary control respecting the management or disposition of its assets, or have had discretionary authority or discretionary responsibility in the administration of the Plan and are responsible or liable in some manner for the conduct alleged in this Complaint. Plaintiffs will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.

## FACTS APPLICABLE TO ALL COUNTS

21.     Under ERISA, anyone who exercises discretion or control over plan assets, including the Plan Sponsor, is a fiduciary.

22.     In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

23.     As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

24.     Throughout the class period, the Plan incurred expenses through paying service providers both direct and indirect compensation to provide services to the Plan.

25.     Throughout the class period, the Plan paid direct and/or indirect compensation for services ranging from, among others, recordkeeping and administration, accounting, consulting, trustee services, loan processing, participant communications, investment management services, and legal services. Hereafter, the payment for services from Plan assets shall collectively be referred to as "Administrative Expenses." [2]

---

[2] The amount of Administrative Expenses specifically identified in this Complaint likely understate the actual Administrative Expenses paid by Plan participants because the amounts do not include

26.     The use of Plan assets to pay Administrative Expenses reduces the funds available to Plan participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

27.     Throughout the class period, the Plan has been funded by a combination of wage withholdings by participants and Ochsner matching contributions, each of which is deposited into the Plan's trust fund and allocated to individual participant accounts.

28.     Throughout the class period, the terms of the Plan require Ochsner to make matching contributions to the Plan based on each participant's contributions.

29.     Ochsner must pay all matching contributions that have accrued throughout a calendar year to the Plan trustee within a reasonable period of time after the end of the prior calendar year.

30.     Upon their deposit into the Plan's trust fund, all participant contributions and Ochsner contributions become assets of the Plan.

31.     Under the terms of the Plan, participants are immediately vested in their own contributions, as well as any actual earnings thereon and are vested in Ochsner matching contributions and any actual earnings on such amounts based on a six-year vesting schedule.

32.     To the extent a participant is not 100% vested upon termination of employment, the participant forfeits the unvested value of Ochsner contributions and any actual earnings thereon (hereafter, "Forfeited Plan Assets") in his or her account on the earlier of the date the participant takes a lump sum distribution of all his or her vested interest in the Plan or the end of the plan year the participant incurs five consecutive one-year Breaks in Service (within the meaning of the Plan document).

---

undisclosed indirect compensation paid by Plan participants.

33.    According to the Plan, the Plan Fiduciaries had discretion to, at a minimum, use Forfeited Plan Assets to pay Administrative Expenses *or* reduce future contributions. The Plan's Summary Plan Description also provided that "Fees and expenses charged against the Plan assets in general may be paid from forfeitures or may be allocated among the accounts of all Participants . . . ."

34.    Additionally, under ERISA, Plan Fiduciaries always have the ability to allocate Forfeited Plan Assets to the accounts of eligible Plan participants. *See* 29 U.S.C. § 1002(34) (Plan Fiduciaries have discretion to allocate "forfeitures of accounts of other participants" to participants).

35.    In other words, at the discretion of Defendants, Forfeited Plan Assets may be used to pay the Plan's expenses, reduce Ochsner's contributions to the Plan, or allocate Forfeited Plan Assets to the accounts of eligible Plan participants. Which of these options would be in the best interests of participants depends on the particular facts and circumstances present at the time of the allocation decision.

36.    Instead of acting solely in the interest of Plan participants by using Forfeited Plan Assets to reduce or eliminate the administrative expenses charged to the individual accounts of Plan participants or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants, Defendants chose to use these Plan assets for the exclusive purpose of reducing Ochsner's matching contributions to the Plan, thereby saving the Company millions of dollars at the expense of the Plan.

37.    Under ERISA, when making decisions regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S.C. § 1104 (a)(1)(D) to discharge their duties "in accordance with the documents and instruments governing the plan . . . ."

38.     The Plan Fiduciaries clearly had discretion to use the Forfeited Plan Assets to pay Administrative Expenses or reduce Ochsner's matching contribution obligation under both the Plan and ERISA. *See* 29 U.S.C. § 1002(34) (Plan Fiduciaries have discretion to allocate "forfeitures of accounts of other participants" to participants).

39.     Under ERISA, when making decisions regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S. Code § 1104 to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries, **and for the "exclusive purposes of providing benefits to participants in the plan** and their beneficiaries **and defraying reasonable expenses** of administering the plan." 29 U.S.C. § 1103(c)(1) (emph. added).

40.     Yet, throughout the class period, the Defendants consistently did not use all Forfeited Plan Assets to offset Administrative Expenses or allocate the Forfeited Plan Assets back to the accounts of eligible Plan participants ***prior to*** using the Forfeited Plan Assets to reduce Defendant's contractually obligated contributions to the Plan, resulting in a reduction in the benefits available to Plan participants.

41.     Instead, the Plan Fiduciaries have consistently chosen to utilize a significant portion of the Forfeited Plan Assets to benefit Ochsner to the detriment of Plan participants by reducing Defendants' contractually obligated contributions to the Plan.

42.     During 2019, Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $1,843,926 in Forfeited Plan Assets to offset Ochsner contributions instead of allocating forfeitures to pay Administrative Expenses or allocating the Forfeited Plan Assets back to eligible participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

43.    During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use Forfeited Plan Assets to pay Administrative Expenses deducted from net assets available for benefits in the amount of $1,167,313 for the year ended December 31, 2019.

44.    On December 31, 2019, unallocated Forfeited Plan Assets were $628,874.

45.    During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use Forfeited Plan Assets of $628,874 that remained unallocated at the end of the year to pay Administrative Expenses deducted from net assets available for benefits in the amount of $1,167,313 for the year ended December 31, 2019.

46.    During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use Forfeited Plan Assets of $628,874 in a timely fashion to avoid having unallocated Forfeited Plan Assets of $628,874 on December 31, 2019.

47.    During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated Forfeited Plan Assets of $628,874 carried over from 2019 in a timely fashion to pay Administrative Expenses or to allocate the Forfeited Plan Assets back to eligible Plan Participants in accordance with a definite formula defined in the Plan.

48.    During 2020, Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $1,597,179 in Forfeited Plan Assets to offset Ochsner contributions instead of allocating Forfeited Plan Assets to pay Administrative Expenses or allocating the Forfeited Plan Assets back to eligible participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

49.    During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use Forfeited Plan Assets to pay Administrative Expenses deducted from net assets available for benefits in the amount of $1,315,673 for the year ended December 31, 2020.

50.     On December 31, 2020, unallocated Forfeited Plan Assets were $280,647.

51.     During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $280,647 that remained unallocated at the end of the year to pay Administrative Expenses deducted from net assets available for benefits in the amount of $1,315,673 for the year ended December 31, 2020.

52.     During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $280,647 in a timely fashion to avoid having unallocated Forfeited Plan Assets of $280,647 on December 31, 2020.

53.     During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated Forfeited Plan Assets of $280,647 carried over from 2020 in a timely fashion to pay Administrative Expenses or to allocate the Forfeited Plan Assets back to eligible Plan Participants in accordance with a definite formula defined in the Plan.

54.     During 2021, Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $2,400,764 in Forfeited Plan Assets to offset Ochsner contributions instead of allocating Forfeited Plan Assets to pay Administrative Expenses or allocating the forfeitures back to eligible participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

55.     During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use Forfeited Plan Assets to pay Administrative Expenses deducted from net assets available for benefits in the amount of $1,658,137 for the year ended December 31, 2021.

56.     On December 31, 2021, unallocated Forfeited Plan Assets were $966,883.

57.     During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $966,883 that remained unallocated at

the end of the year to pay Administrative Expenses deducted from net assets available for benefits in the amount of $1,658,137 for the year ended December 31, 2021.

58.     During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $966,883 in a timely fashion to avoid having unallocated Forfeited Plan Assets of $966,883 on December 31, 2021.

59.     During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated Forfeited Plan Assets of $966,883 carried over from 2021 in a timely fashion to pay Administrative Expenses or to allocate the Forfeited Plan Assets back to eligible Plan Participants in accordance with a definite formula defined in the Plan.

60.      During 2022, Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $2,595,597 in Forfeited Plan Assets to offset Ochsner contributions instead of allocating Forfeited Plan Assets to pay Administrative Expenses or allocating the forfeitures back to eligible participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

61.     During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use Forfeited Plan Assets to pay Administrative Expenses deducted from net assets available for benefits in the amount of $1,966,821 for the year ended December 31, 2021.

62.     On December 31, 2022, unallocated Forfeited Plan Assets were $1,340,717.

63.     During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $1,340,717 that remained unallocated at the end of the year to pay Administrative Expenses deducted from net assets available for benefits in the amount of $1,966,821 for the year ended December 31, 2022.

64.    During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $1,340,717 in a timely fashion to avoid having unallocated Forfeited Plan Assets of $1,340,717 on December 31, 2022.

65.    During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use the unallocated Forfeited Plan Assets of $1,340,717 carried over from 2022 in a timely fashion to pay Administrative Expenses or to allocate the Forfeited Plan Assets back to eligible Plan Participants in accordance with a definite formula defined in the Plan.

66.    During 2023, Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $3,120,050 in Forfeited Plan Assets to offset Ochsner contributions instead of allocating Forfeited Plan Assets to pay Administrative Expenses or allocating the forfeitures back to eligible participants in the plan year in which they were incurred in accordance with a definite formula defined in the Plan.

67.    During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use Forfeited Plan Assets to pay Administrative Expenses deducted from net assets available for benefits in the amount of $2,445,653 for the year ended December 31, 2023.

68.    On December 31, 2023, unallocated Forfeited Plan Assets were $1,345,744.

69.    During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $1,345,744 that remained unallocated at the end of the year to pay Administrative Expenses deducted from net assets available for benefits in the amount of $2,445,653 for the year ended December 31, 2023.

70.    During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $1,345,744 in a timely fashion to avoid having unallocated Forfeited Plan Assets of $1,345,744 on December 31, 2023.

71.    The Plan's 2024 Form 5500 is not yet available, but, upon information and belief, the amount of unallocated Forfeited Plan Assets for calendar year 2023 (provided above) was substantially similar in calendar year 2024 and that in 2024 the Plan Fiduciaries again exercised discretion over, and control of, Plan assets by failing to use the unallocated Forfeited Plan Assets to pay Administrative Expenses or to allocate the Forfeited Plan Assets back to eligible participants in accordance with a definite formula defined in the Plan.

72.    Under the terms of the Plan and the provisions of ERISA, throughout the class period the Plan Fiduciaries exercised discretion over, and control of, Plan assets when directing the use of Forfeited Plan Assets.

73.    Under the terms of the Plan and the provisions of ERISA, throughout the class period the Plan Fiduciaries were required to determine, with respect to Forfeited Plan Assets, which of several alternatives would be in the best interest of the participants.

74.    As described in detail above, throughout the class period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce employer contributions was, all else being equal, in the best interest of Ochsner because that option decreased Ochsner's own contribution costs.

75.    As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when directing the use of Plan assets to pay administrative fees to Vanguard from the accounts of participants.

76.    As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when failing to use Forfeited Plan Assets to cover indirect compensation paid to Vanguard for administrative services.

77.    There are no facts or circumstances throughout the class period that make discretionary decisions to use Forfeited Plan Assets to reduce Ochsner contributions consistent

with discharging their duties with respect to the Plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan.

78.    For each year of the putative class period, Ochsner had sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently based the decision of how to allocate Forfeited Plan Assets solely on Ochsner's own self-interests and failed to consider the interests of the Plan and its participants.

79.    As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets and consistently and reflexively chose to use the Forfeited Plan Assets for their own exclusive interest, to the detriment of the Plan and participants, by allocating Forfeited Plan Assets toward reducing Ochsner's contributions to the Plan while enabling Ochsner to maintain its discretionary contributions as an employee benefit.

80.    While Defendants benefited, the Plan and its participants and beneficiaries suffered. If Defendants decided throughout the class period to use Forfeited Plan Assets to defray the reasonable expenses of administering the Plan or allocated the Forfeited Plan Assets back to eligible participants, the value of the Plan and the value of the participant's individual accounts would have been greater thereby providing greater retirement benefits to Plan participants and beneficiaries.

81.    Had the Plan Fiduciaries exercised discretion over the Forfeited Plan Assets plan assets solely in the interest of the participants and beneficiaries, the Plan Fiduciaries would have chosen to use Forfeited Plan Assets to defray the reasonable expense of administering the Plan or allocated the Forfeited Plan Assets back to eligible participants.

## CLASS ACTION ALLEGATIONS

82.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

83.     In acting in their representative capacity for the Plan, Plaintiffs seek to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiffs seek to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the Ochsner Clinic Foundation 401(k) Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning March 14, 2019, and running through the date of judgment.

84.     The class includes over 20,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

85.     There are questions of law and fact common to this class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant. Thus, common questions of law and fact include but are not limited to the following:

> a.     Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);
>
> b.     Whether Defendants breached their fiduciary duties to the Plan with respect to their management and allocation of Forfeited Plan Assets;
>
> c.     Whether Plan Fiduciaries engaged in prohibited transactions with Forfeited Plan Assets;
>
> d.     What are the losses to the Plan resulting from each alleged breach of ERISA; and
>
> e.     What Plan-wide equitable and other relief the Court should impose to remedy Defendants' alleged breaches.

86.    Plaintiffs' claims are typical of the claims of the class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs were participants during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

87.    Plaintiffs will adequately represent the class pursuant to Federal Rule of Civil Procedure 23(a)(4), because they were participants in the Plan during the class period, have no interest that conflicts with the class, are committed to the vigorous representation of the class, and have engaged experienced and competent lawyers to represent the class.

88.    Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

89.    Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

90.    Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the class.

## **COUNT I**
**Breach of ERISA's Fiduciary Duty of Loyalty**

16

**(29 U.S.C 1104(a)(1)(A))**

91.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

92.     When exercising discretion and control over Forfeited Plan Assets and using them to reduce Ochsner contributions, instead of defraying the reasonable costs of administering the Plan or allocating the Forfeited Plan Assets back to eligible Plan participants, the Plan Fiduciaries considered the best interest of Ochsner as opposed to participants, in violation of ERISA.

93.     Alternatively, when exercising discretion and control over Forfeited Plan Assets and failing to use them to defray the reasonable costs of administering the Plan, the Plan Fiduciaries considered the best interests of Ochsner, as opposed to participants, in violation of ERISA.

94.     As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan suffered injury and loss for which they are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

95.     Each Defendant knowingly participated in the breach of the other Defendants, knew that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

96.     Plaintiffs have suffered losses as a direct result of Defendants' breach of their duty of loyalty.

## COUNT II
### Breach of ERISA's Fiduciary Duty of Prudence
### (29 U.S.C. 1104(a)(1)(B))

97.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

98.    When exercising discretion and control over Forfeited Plan Assets and using them to reduce Ochsner contributions, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA.

99.    In deciding how to allocate Forfeited Plan Assets, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the Forfeited Plan Assets in the Plan to reduce Ochsner's own contribution expenses, as opposed to the administrative expenses charged to participant accounts, was in the best interest of the Plan's participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets, such as allocating the Forfeited Plan Assets back to the accounts of eligible participants, after considering all relevant factors.

100.    Additionally, Defendants failed to consult with an independent nonconflicted decisionmaker to advise them when deciding upon the best course of action, under the terms of the Plan and ERISA, for allocating the Forfeited Plan Assets in the Plan, as a prudent person would have done.

101.    By refusing to use Forfeited Plan Assets to eliminate the administrative expenses charged to participant accounts, and instead deciding to use these Plan assets to reduce Ochsner's own contribution expenses, Defendants caused the Plan to receive fewer contributions that would otherwise have increased Plan assets, and caused participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited Plan Assets to pay Administrative Expenses.

102.    Alternatively, by refusing to allocate the Forfeited Plan Assets back to eligible Plan participants and instead of deciding to use these Plan assets to reduce Ochsner's own contribution expenses, Defendants caused the Plan to receive fewer contributions that would otherwise have included Plan assets, and prevented eligible Plan participants from receiving and allocation of the Forfeited Plan Assets that would have increased the value of the Plan assets and the accounts of Plan participants.

103.    Had Defendants conformed with the minimum standard of care required under ERISA, they would not have used Forfeited Plan Assets to reduce Ochsner contributions.

104.    Alternatively, had Defendants conformed with the minimum standard of care required under ERISA, they would have used Forfeited Plan Assets to defray reasonable expenses of administering the Plan.

105.    Plaintiffs have suffered losses as a direct result of the Defendants' breach of their duty of prudence.

## COUNT III
### Fiduciary Prohibited Transactions/ Self-Dealing
### (29 U.S.C. 1106(b)(1))

106.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

107.    29 U.S.C. § 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

108.    Defendants violated this prohibition in their management and control of Forfeited Plan Assets in the Plan. By allocating these Forfeited Plan Assets toward offsetting Ochsner's matching contributions, thereby saving Ochsner millions of dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest and for their own account.

109.    As a result of this prohibited conduct, Defendants caused the Plan to suffer losses in the amount of the Forfeited Plan Assets that were substituted for employer matching contributions and lost earnings on those assets.

110.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

### COUNT IV
### Fiduciary Prohibited Transactions/ Self-Dealing
### (29 U.S.C. 1106(a)(1))

111.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

112.    29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect. . . exchange. . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

113.    Defendants are parties in interest, as that term is defined under 29 U.S.C. § 1002 (14), because they are Plan Fiduciaries and because Ochsner is the employer of Plan participants.

114.    When Defendants elected to use Forfeited Plan Assets as a substitute for future employer contributions to the Plan, thereby saving Ochsner millions of dollars in contribution expenses, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or use of Plan assets by or for the benefit of a party in interest.

115.    As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Forfeited Plan Assets that were substituted for employer matching contributions and lost investment returns on those assets.

116.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## COUNT V
### Failure to Adequately Monitor Other Fiduciaries

117.    Plaintiffs restate the above allegations as if fully set forth herein.

118.    Defendant Ochsner had the authority to appoint and remove members or individuals responsible for Forfeited Plan Assets on the Committee and knew or should have known that these fiduciaries had critical responsibilities for the Plan.

119.    In light of this authority, Defendant Ochsner had a duty to monitor those individuals responsible for Forfeited Plan Assets on the Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

120.    Defendant Ochsner had a duty to ensure that the individuals responsible for Forfeited Plan Assets possessed the needed qualifications and experience to carry out their duties

21

(or used qualified advisors and service providers to fulfill their duties); had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Forfeited Plan Assets; and reported regularly to Ochsner.

121. The objectively disloyal, imprudent, and conflicted manner in which the Committee of the Plan handled Forfeited Plan Assets inferentially establish that Defendant Ochsner breached its duty to monitor by, among other things:

a. Failing to monitor and evaluate the performance of individuals responsible for Forfeited Plan Assets on the Committee of the Plan or have a system in place for doing so, standing idly by as the Plan misallocated Forfeited Plan Assets for Ochsner's benefit;

b. Failing to monitor the process by which the Committee of the Plan was evaluated and failing to investigate the proper use of Forfeited Plan Assets; and

c. Failing to remove individuals responsible for Forfeited Plan Assets on the Committee of the Plan whose performance was inadequate in that these individuals continued to misallocate Forfeited Plan Assets for the benefit of Ochsner.

122. As the consequences of the breaches of the duty to monitor for Forfeited Plan Assets, the Plaintiffs and participants suffered millions of dollars of objectively unreasonable and unnecessary monetary losses.

123. Pursuant to 29 U.S.C. §§1109(a) and 1132(a)(2), Defendant Ochsner is liable to restore to the Plan all losses caused by its failure to adequately monitor individuals responsible for Forfeited Plan Assets on the Committee. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as set forth in the Prayer for Relief.

## **PRAYER FOR RELIEF**

For these reasons, Plaintiffs, on behalf of the Plan and all similarly situated participants and beneficiaries, respectfully request that the Court:

- find and declare that Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

- order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

- determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;

- order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

- remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

- surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

- certify the class, appoint Plaintiffs as class representatives, and appoint the Chirinos Law Firm PLLC and Stiegler Law Firm LLC as class counsel;

- award to Plaintiffs and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

- order the payment of interest to the extent it is allowed by law; and

- grant other equitable or remedial relief as the Court deems appropriate.

March 14, 2025                          Respectfully submitted,

                                        **STIEGLER LAW FIRM LLC**

                                        */s/Charles J. Stiegler*
                                        Charles Joseph Stiegler
                                        La. Bar Roll No. 33456

23

318 Harrison Ave., Ste 104
New Orleans, LA 70124-3126
Phone: 504-267-0777 | Fax: 504-513-3084
Email: charles@stieglerlawfirm.com

**CHIRINOS LAW FIRM PLLC**
Tulio D. Chirinos (TA)
La. Bar Roll No. 35079
370 Camino Gardens Blvd., Ste 106
Boca Raton, FL 33432
Telephone: (561) 299-6334
tchirinos@chirinoslawfirm.com

Jenny M. Lewis, Esq. (*Pro Hac Vice Forthcoming*)
jlewis@chirinoslawfirm.com
1323 North Blvd.
Houston, TX 77006
Tel.: (832) 466-5575

*Attorneys for Plaintiffs and Proposed Class*