UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MEGAN ESTAY ET AL.**                     **CIVIL ACTION**

**VERSUS**                                 **NO: 25-507**

**OCHSNER CLINIC FOUNDATION ET AL.**       **SECTION "H"**

## ORDER AND REASONS

Before the Court is Defendants' Motion to Dismiss (Doc. 15). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiffs Megan Estay and Francesca Messore, long-time employees of Defendant Ochsner Clinic Foundation ("Ochsner"), bring this action on behalf of a class of current and former employees of Ochsner who participated in its retirement 401k Plan ("the Plan"). Plaintiffs allege that Defendant Ochsner, the plan sponsor, and Defendant Retirement Benefits Committee, the plan administrator, breached their duties under ERISA when they used Plan forfeitures to reduce Ochsner's matching contribution obligation rather than defray the administrative expenses of the Plan. Plaintiff alleges that, under the terms of the Plan, Ochsner makes matching contributions to the Plan based on each participant's contributions. If a participant's employment is terminated before he becomes vested in those amounts, those contributions are forfeited to the Plan ("the Forfeitures"). According to the Plan, Defendants, as

1

the plan fiduciaries, have discretion to use the Forfeitures to either pay administrative expenses of the Plan or reduce future employer matching contributions. While allocating the Forfeitures to defray administrative expenses is in the Plan participants' best interest because it reduces the administrative expenses deducted from their accounts, using it to reduce employer contributions is in the employer's best interest because it saves the employer money. Plaintiffs allege that Defendants always chose to use the Forfeitures to reduce Ochsner's matching contributions. Accordingly, Plaintiffs bring claims under ERISA for breach of duty of loyalty, breach of duty of prudence, prohibited transactions under § 1106(a)(1) and (b)(1), and failure to monitor other fiduciaries. Defendants have moved to dismiss all of Plaintiffs' claims, arguing that they have failed to state a claim upon which relief can be granted and that they have failed to exhaust administrative remedies.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however,

---

[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[2] *Id.*

[3] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[7]

## LAW AND ANALYSIS

Defendants have moved to dismiss each of Plaintiffs' claims. This Court will consider each in turn.

### I. Breach of Duty of Loyalty

First, Defendants argue that Plaintiffs have not alleged a claim for breach of the duty of loyalty under ERISA. "To state a claim for breach of a fiduciary duty under ERISA, a plaintiff must establish three elements: (1) the plan is governed by ERISA, (2) the defendant is a fiduciary of the plan, and (3) the defendant breached its fiduciary duties under ERISA, resulting in losses to the plan's participants."[8] In accordance with the duty of loyalty, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," "provid[e] benefits to participants and their beneficiaries," and "defray[ ] reasonable expenses of administering the plan."[9]

---

[4] *Iqbal*, 556 U.S. at 678.
[5] *Id.*
[6] *Lormand*, 565 F.3d at 255–57.
[7] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).
[8] Spence v. Am. Airlines, Inc., 775 F. Supp. 3d 963, 994 (N.D. Tex. 2025).
[9] 29 U.S.C. § 1104(a)(1)(A).

3

Further, fiduciaries are required to discharge their duties with respect to a plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."[10]

Plaintiffs allege that Defendants breached their duty of loyalty by using the Forfeitures to reduce Ochsner's matching contribution instead of using the Forfeitures to defray the plan's administrative expenses, which would have been in the participants' best interests. They also argue that Defendants chose not to use the full forfeiture amounts and left amounts unused at the end of the year. Plaintiffs argue therefore that the failure to select the alternative that is in the participants' best interest and use the full amounts available to benefit the participants is a breach of loyalty under ERISA.

Defendants argue that Plaintiffs fail to state a claim for a breach of duty of loyalty because Defendants' decision to allocate the Forfeitures to contributing matches rather than plan expenses is supported by federal regulations and the Plan itself. Indeed, Defendants correctly point out the Plan gives Defendants discretion to allocate Forfeitures to reduce the employer's obligations to make matching contributions "and/or to pay administrative expenses of the Plan."[11] In addition, employer matching contributions are discretionary under the Plan.[12] Finally, according to Plaintiffs' account statements, employer contributions are distributed in July and therefore the amounts left at the end of the year are not "leftover" but are amounts that have

---

[10] *Id.* § 1104(a)(1)(D).
[11] Doc. 15-3 at 57.
[12] *Id.* at 47.

4

accrued since July and will be allocated in the following July.[13] Accordingly, the question before this Court is whether Defendants have breached the duty of loyalty by allocating the Forfeitures to matching contributions instead of administrative expenses despite complying with the terms of the Plan.

Although this Court is the first in the circuit to consider whether a fiduciary's discretionary allocation of forfeitures can be a breach of loyalty under ERISA, at least a dozen other district courts have considered similar arguments and found them lacking.[14] In *Hutchins v. HP Inc.* (*Hutchins I*), one of the first courts to consider this issue, the court gave a thoughtful analysis of a fiduciary's responsibilities under ERISA.[15] As it points out, ERISA does not require employers to establish employee benefits plans or mandate what kind of benefits employers must provide if they choose to do so.[16] "Instead, the purpose of ERISA is 'to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits. . . . 'ERISA does no

---

[13] Doc. 21.

[14] *See e.g.,* Bozzini v. Ferguson Enters. LLC, No. 22-CV-05667-AMO, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025); McWashington v. Nordstrom, Inc., No. C24-1230 TSZ, 2025 WL 1736765, at *14 (W.D. Wash. June 23, 2025); Dimou v. Thermo Fisher Sci. Inc., No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *9 (S.D. Cal. Sept. 19, 2024); Cain v. Siemens Corp., No. CV 24-8730, 2025 WL 2172684, at *4 (D.N.J. July 31, 2025); Madrigal v. Kaiser Found. Health Plan, Inc., No. 2:24-CV-05191-MRA-JC, 2025 WL 1299002, at *5 (C.D. Cal. May 2, 2025); Sievert v. Knight-Swift Transportation Holdings, Inc., 780 F. Supp. 3d 870, 876 (D. Ariz. 2025); Wright v. JPMorgan Chase & Co, No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642, at *5 (C.D. Cal. June 13, 2025); Fumich v. Novo Nordisk Inc., No. CV 24-9158 (ZNQ) (JBD), 2025 WL 2399134, at *6 (D.N.J. Aug. 19, 2025); Middleton v. Amentum Parent Holdings, LLC, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *15 (D. Kan. Aug. 5, 2025); Hutchins v. HP Inc., 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024); Barragan v. Honeywell Intern., 2025 WL 2383652 (D.N.J. Aug. 18, 2025); Gaudalupe Cano v. The Home Depot, Inc., et al., No. 1:24-CV-03793-TRJ, 2025 WL 2589567, at *4 (N.D. Ga. Aug. 26, 2025).

[15] *Hutchins I,* 737 F. Supp. 3d at 862.

[16] *Id.*

5

more than protect the benefits which are due to an employee under a plan.'"[17] In addition, the *Hutchins I* court explained in depth that the plaintiff's theory of liability was "contrary to the settled understanding of Congress and the Treasury Department regarding defined contribution plans."[18] Indeed, the Conference Report accompanying the Tax Reform Act of 1986 recognized that forfeitures could be allocated to either participant accounts, employer contributions, or administrative costs.[19]

The *Hutchins I* court went on to explain that the plaintiff's claim was too broad where "if given the option between using forfeited funds to pay administrative costs or to reduce employer contributions," the fiduciary would always be required to choose to pay administrative costs because it would always be in the participants' best interest.[20] It held that the plaintiff's theory would therefore "extend the protection of ERISA beyond its statutory framework" by effectively creating an additional benefit beyond those stated in the plan: the payment of administrative expenses.[21] The court concluded that the breadth of the plaintiff's claim made it implausible but allowed the

---

[17] *Id.* (quoting Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996) and Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1100 (9th Cir. 2004)).
[18] *Id.* at 862–63.
[19] *Id.* at 863.
[20] *Id.* at 862.
[21] *Id.* at 863.

plaintiff the opportunity to amend if he could plausibly allege more "particularized facts or special circumstances present in that case."[22]

Several months later, in *Hutchins II*, the court dismissed the plaintiff's claims for a second time for substantially the same reasons.[23] The court emphasized that "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits."[24] The court found that the case law does not establish that a potential conflict of interest automatically amounts to a breach of fiduciary duty.[25] Rather, to state a claim for breach of duty of loyalty, the plaintiff must allege facts that make a breach plausible, such as a failure to comply with plan terms.[26] The court found that the facts of the complaint indicated only that the defendant complied with the plan's lawful terms and provided participants with the benefits due.[27] The court pointed out that there was no allegation that the plan failed to comply with ERISA or required the fiduciary to breach its duties.[28]

Largely in reliance on *Hutchins I* and *II*, other district courts have reached the same conclusions. The courts dismissing these claims rely primarily on three points: (1) ERISA does not require the fiduciary to maximize profits, only to ensure that participants receive their promised benefits; (2) both ERISA and the terms of the plans themselves authorize the use of forfeiture funds for employer contribution matching; and (3) the plaintiffs'

---

[22] *Id.*
[23] Hutchins v. HP Inc., 767 F. Supp. 3d 912 (N.D. Cali. 2025).
[24] *Id.* at 924.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.* at 925.

theory would effectively require forfeiture funds to be used for administrative expenses and would create an additional benefit to participants not contemplated in the plans.[29]

For example, as recently as a few weeks ago, in *Barragan v. Honeywell International*, a court in the District of New Jersey dismissed the plaintiffs' claims for a second time after allowing leave to amend, holding that ERISA does not require a fiduciary to maximize participant's benefits, only to ensure that participants receive their promised benefits.[30] It pointed out that the plaintiff's position would mean that using forfeitures for contribution matching would never be appropriate and create an additional benefit for participants in years where the plan had forfeitures.[31] The court held that because the plan participant received what they were promised and the fiduciary complied with the requirements of the plan, the plaintiffs had not stated a claim.[32] In addition, the Department of Labor recently filed an amicus brief with the Ninth Circuit urging it to affirm *Hutchins I* and *II*.[33] In its brief, the Department takes the position that it is not a breach of fiduciary duty to use forfeitures to offset employer contributions because participants receive their

---

[29] *See e.g., McWashington*, 2025 WL 1736765, at *14; *Dimou*, 2024 WL 4508450, at *9; *Cain*, 2025 WL 2172684, at *4; *Madrigal*, 2025 WL 1299002, at *5; *Sievert*, 780 F. Supp. 3d 876; *Wright*, 2025 WL 1683642, at *5; *Middleton*, 2025 WL 2229959, at *15; *Hutchins I*, 737 F. Supp. 3d at 862; *Barragan*, 2025 WL 2383652; *Cano*, 2025 WL 2589567, at *4.
[30] Barragan v. Honeywell Intern., 2025 WL 2383652 (D.N.J. Aug. 18, 2025).
[31] *Id.*
[32] *Id.*
[33] Doc. 28-1.

promised benefits under the plan.³⁴ This Court finds the reasoning in this line of cases compelling.

In response, Plaintiffs allege that these cases are outside of this Circuit and do not comport with the Fifth Circuit's holding in *Bussian v. RJR Nabisco*.³⁵ In *Bussian*, the fiduciary selected a new annuity to cover all pension obligations of a company it had purchased and terminated the company's previous 401k plan.³⁶ The 401k plan provided that upon its termination any excess funds would revert to the fiduciary.³⁷ The issue in *Bussian* was whether the fiduciary violated its fiduciary duties when it terminated the 401k plan specifically to gain access to its surplus assets.³⁸ Termination of the plan and recoupment of the surplus assets by the fiduciary were permitted by both ERISA and the Plan.³⁹ The Fifth Circuit held, however, that even where ERISA allows a fiduciary to undertake a certain action, it cannot deviate from the obligation to discharge its duties solely in the interest of the participants.⁴⁰ Plaintiff relies on this point and argues that here too even where ERISA and the Plan allowed Defendants to allocate the Forfeitures to employer matching contributions, they could not do so in deviation from their obligation to act in the participants' best interest.

Importantly, however, the Fifth Circuit in *Bussian* noted that the fiduciary's acts in attempting to maximize the size of the surplus assets that

---

³⁴ *Id.*
³⁵ Bussian v. RJR Nabisco, 223 F.3d 286 (5th Cir. 2000).
³⁶ *Id.* at 289.
³⁷ *Id.*
³⁸ *Id.*
³⁹ *Id.* at 295–96.
⁴⁰ *Id.*

would revert to it had the result of reducing the benefits available to participants, and many participants did not receive their full benefits.[41] This fact makes *Bussian* easily distinguishable from the facts at issue here and in alliance with the courts dismissing these types of claims. The plan participants in *Bussian* did not receive their promised benefits. Courts have held that plan fiduciaries have a duty to ensure that participants receive their promised benefits.[42] Indeed, the Supreme Court has made clear that "ERISA does not guarantee substantive benefits. The statute, instead, seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures."[43] ERISA does not, however, "create an exclusive duty to *maximize* pecuniary benefits."[44] Here, Plaintiffs do not allege that they have not received their promised benefits, and instead, their theory of liability would require Defendants' to maximize their benefits. Accordingly, this Court does not find that *Bussian* is contrary to *Hutchins* and its progeny. *Bussian* does not support Plaintiffs' contention that Defendants'

---

[41] *Id.* ("Unfortunately, Appellants and some other Plan participants have not received their full benefits.") ("Undertaking steps to maximize the size of the reversion with the direct result of reducing benefits would be a violation of ERISA's commands.").

[42] *Hutchins II*, 767 F. Supp. 3d at 924.

[43] Gobeille v. Liberty Mut. Ins. Co., 577 U.S. 312, 320–21 (2016).

[44] Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns, 144 F.3d 1279, 1282 (9th Cir. 1998); *see* Cooke v. Lynn Sand & Stone Co., 70 F.3d 201, 205 (1st Cir. 1995) ("Such plans should be read fairly, but not automatically to maximize the award to the beneficiary."); Rozo v. Principal Life Ins. Co., 48 F.4th 589, 598 (8th Cir. 2022) ("We agree with the Ninth Circuit that "ERISA does not create an exclusive duty to maximize pecuniary benefits.").

10

use of the Forfeitures for employer matching contributions in compliance with ERISA and the terms of the Plan is a breach of loyalty.

Finally, Plaintiffs draw this Court's attention to the handful of cases that have allowed similar claims to survive past the motion to dismiss stage. These decisions are largely distinguishable on their facts. For example, in *McManus v. Clorox Company*, the employer matching contributions were mandatory under the plan, and the court found that the defendant's decision to use forfeitures toward that obligation resulted in fewer contributions to the plan than the defendant had promised to pay.[45] In *Stewart v. Nextera Energy, Inc.*, the plaintiff alleged that the fiduciary had violated the plan where it provided that remaining forfeitures "*shall* be applied to reduce Plan administrative expenses" before any amounts are applied to reduce employer contributions.[46] And in *Rodriguez v. Intuit Inc.*, the court held that the plaintiff had alleged that the plan at issue did not authorize the "specific decisions" made by the defendant with respect to the use of the forfeitures.[47] Where these cases are not distinguishable, this Court finds the analyses of the majority of courts considering the issue to be more compelling.

Accordingly, this Court aligns with the majority. Plaintiffs have not pointed to any way in which the facts of their claim present unique or special circumstances. And as discussed above, Plaintiffs have not pointed the Court to any Fifth Circuit decision that undermines these conclusions. Here,

---

[45] McManus v. Clorox Co.*,* 2025 WL 732087 (N.D. Cal., March 3, 2025); *see also* Buescher v. N. Am. Lighting, Inc., No. 24-CV-2076, 2025 WL 1927503, at *12 (C.D. Ill. June 30, 2025).

[46] Stewart v. Nextera Energy, Inc., 23-81314-CIV-CANNON, Dkt. 58 (S.D. Fla. Aug. 14, 2025).

[47] Rodriguez v Intuit Inc., 744 F. Supp. 3d 935 (N.D. Cal., Feb. 5, 2025).

Defendants acted in compliance with the terms of the Plan and ERISA in making a discretionary choice to allocate Forfeitures to elective contributing employer matches. Plaintiffs have not alleged that they did not receive the benefits promised under the Plan or that Defendants acted in violation of the Plan. ERISA requires only that participants receive their promised benefits, and Plaintiffs' theory would create an additional benefit to participants not contemplated in the Plan.[48] Accordingly, the Court finds that Plaintiffs have failed to state a claim for a breach of loyalty under ERISA.

## II. Breach of Duty of Prudence

Next, Defendants allege that Plaintiffs have failed to state a claim for a breach of the duty of prudence under ERISA. ERISA fiduciaries are held to the "prudent man" standard of care, which requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[49] Plaintiffs argue that the Defendants failed to use care, skill, and prudence in deciding how to allocate the Forfeitures. Specifically, they emphasize the fact that Defendants consistently chose to allocate the Forfeitures to employer matching contributions and therefore did not

---

[48] *Hutchins I*, 737 F. Supp. 3d at 863.
[49] 29 U.S.C. § 1104(a)(1)(B).

undertake a reasoned and impartial decision-making process to determine what use of the Forfeitures was in the participants' best interest.

Courts have dismissed these claims for substantially the same reasons as those discussed above.[50] In *Hutchins II*, the court dismissed the plaintiff's claim where the plaintiff had not alleged any specific facts that invited the inference that the fiduciary had not actually investigated how to use the forfeiture amounts.[51] It held that the plaintiff's broad allegations would result in the same categorical rule that would practically require forfeitures to always be used for administrative expenses.[52] It further pointed out that where the plaintiff received all of the benefits promised under the plan, he cannot allege that a more thorough investigation would have led to a different outcome.

Here too, Plaintiffs' Complaint does not set forth any specific facts that warrant the inference that that the fiduciaries actually engaged in imprudent conduct. Plaintiff alleges that in each year at issue, Ochsner had sufficient cash on hand to satisfy its contribution obligations to the Plan and yet it chose in its own self-interest to allocate the Forfeitures to contributory matches without considering the interests of the Plan participants. Accordingly, Plaintiffs rely, as in *Hutchins*, on the implication that because the fiduciaries chose to allocate the Forfeitures to matching contributions instead of administrative expenses, then they could not have undertaken a prudent decision-making process. "Plaintiff's theory, however, 'is not limited to any particular circumstances that

---

[50] *See e.g., McWashington*, 2025 WL 1736765, at *14; *Dimou*, 2024 WL 4508450, at *9; *Cain*, 2025 WL 2172684, at *5; *Madrigal*, 2025 WL 1299002, at *5; *Sievert*, 780 F. Supp. 3d 876; *Wright*, 2025 WL 1683642, at *5; *Middleton*, 2025 WL 2229959, at *14–15; *Hutchins I*, 737 F. Supp. 3d at 862; *Barragan*, 2025 WL 2383652, at *4; *Cano*, 2025 WL 2589567, at *4.
[51] *Hutchins II*, 767 F. Supp. 3d at 927.
[52] *Id.*

13

may be present' in each case. Instead, this theory would impose categorical liability anytime a company chose to use forfeitures to reduce its own contributions."[53] "Where, as here, all Plan participants received all of their promised benefits and Plaintiff is unable to point to any circumstances rendering the case unique among the countless ERISA plans permitting the same use of forfeitures, the Court still simply finds Plaintiff's claim implausible."[54] Accordingly, Plaintiffs have failed to allege specific facts stating a claim for a breach of the duty of prudence under ERISA.

### III. Prohibited Transactions

Next, Defendants argue that Plaintiffs cannot succeed on their claims that the Forfeiture allocations were prohibited transactions under 29 U.S.C. § 1106(a)(1) or (b)(1). Section 1106 "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'"[55] Section 1106(a) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . sale or exchange . . . of any property between the plan and a party in interest." "[P]laintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less."[56] Section 1106(b) prohibits self-dealing.

Defendants argue that Plaintiffs cannot succeed on these claims because the inter-plan transfer of assets is not a transaction as contemplated by § 1106.

---

[53] *Cain*, 2025 WL 2172684, at *5.
[54] *Id.*
[55] Cunningham v. Cornell Univ., 145 S. Ct. 1020, 1025 (2025).
[56] *Id.*

14

The Supreme Court has held that "the payment of benefits is in fact not a 'transaction' in the sense that Congress used that term in § [1106](a)."[57] Indeed, § 1106(a) expressly prohibits certain "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length."[58] Here, the Plan assets at issue are merely reallocated within the Plan. The Court finds that the allocation of the Forfeitures is not a transaction as contemplated by § 1106. Other courts considering this issue have agreed.[59]

Plaintiffs argue, however, that § 1106(b)(1) does not require a transaction. To be sure, § 1106(b)(1) does not include the word "transaction," providing only that "a fiduciary with respect to a plan shall not—deal with the assets of the plan in his own interest or for his own account." The court in *Buescher v. N. Am. Lighting, Inc.*, however, recently conducted a thorough and compelling analysis of this argument.[60] After giving an overview of the state of the case law on this issue, it held:

> To be sure, the conduct in question could potentially be viewed as a transaction between the Administrative Committee and NAL itself, insofar as NAL benefitted from the Committee's decision. But at the very least, as observed in *Hutchins I*, the movement of funds within the Plan does not fit neatly within the plain meaning of "transaction." And to the extent that there is any difference between "dealing with" plan assets—as explicitly prohibited by §

---

[57] Lockheed Corp. v. Spink, 517 U.S. 882, 892–93 (1996).
[58] *Id.*
[59] *See e.g., McWashington*, 2025 WL 1736765, at *14; *Dimou*, 2024 WL 4508450, at *9; *Madrigal*, 2025 WL 1299002, at *5; *Sievert*, 780 F. Supp. 3d 876; *Wright*, 2025 WL 1683642, at *5; *Middleton*, 2025 WL 2229959, at *15; *Hutchins I*, 737 F. Supp. 3d at 862; *Barragan*, 2025 WL 2383652; *Cano*, 2025 WL 2589567, at *4; *Hutchins II*, 767 F. Supp. 3d at 928.
[60] Buescher v. N. Am. Lighting, Inc., No. 24-CV-2076, 2025 WL 1927503, at *18 (C.D. Ill. June 30, 2025).

15

> 1106(b)(1)—and "transacting" with them, the definition of the former may be even further removed from the conduct in question. *See* Deal, Black's Law Dictionary (12th ed. 2024) (defining "deal" as "An act of buying and selling; the purchase and exchange of something for profit").
>
> Furthermore, the fiduciary duties contemplated under 29 U.S.C. § 1104 "are supplemented by § 1106's prohibition on transactions involving parties-in-interest and the fiduciaries themselves." . . . A broader view of "transactions," under which any moving of funds within a plan qualifies, would no longer "supplement," but fully subsume the fiduciary duties.
>
> Finally, there is an inherent contradiction in Plaintiff's positions. Recall that central to Plaintiff's breach of loyalty claim was that that duty did not mandate that forfeitures be allocated toward administrative costs in all scenarios. By conceding that, in certain circumstances, allocation of forfeitures to offset employer contributions may be in line with the duty of loyalty, Plaintiff escapes the contention that he is using the fiduciary duties to confer a benefit—as discussed at length above. Yet that nuance is lost when the allocation of forfeitures to offset employer contributions is characterized as a "prohibited transaction." The Plan provides a discretionary choice: allocate forfeitures toward expenses or use them to offset employer contributions. To construe the latter option as a "prohibited transaction" would be to read that choice out of the Plan entirely and conclude that § 1106(b) confers a benefit, a result which cannot be tolerated, for the reasons explained in *Hutchins I* and *II* and the similar cases.

Despite retaining the plaintiff's breach of duty claims, the court in *Buescher* dismissed the § 1106 claims. This Court finds this reasoning sound, and Plaintiffs have not presented the Court with any compelling contrary argument. Accordingly, the Court finds that Plaintiffs have not alleged a

16

transaction and therefore have not stated a claim for a prohibited transaction under either section of § 1106.

## IV. Failure to Monitor Other Fiduciaries

Finally, Plaintiff alleges that Ochsner failed to monitor the fiduciaries responsible for allocating the Forfeitures. This claim is derivative of the other claims and therefore fails as well.[61] Accordingly, all of Plaintiffs' claims are dismissed.

Plaintiffs have requested leave to amend their Complaint in the event that the Court grants Defendants' Motion to Dismiss. The Fifth Circuit has held that "leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile."[62] Finding none of these exceptions present, the Court grants Plaintiffs' request to amend their Complaint to the extent that they can remedy the deficiencies identified herein.

## V. Failure to Exhaust

Having allowed Plaintiffs leave to amend their Complaint, the Court must also address Defendants' argument that Plaintiffs must exhaust administrative remedies before bringing this action. Defendants argue that Plaintiffs' fiduciary duty claims are really claims for additional benefits, and

---

[61] *Dimou*, 2024 WL 4508450, at *11.
[62] Jebaco, Inc. v. Harrah's Operating Co., 587 F.3d 314, 322 (5th Cir. 2009).

therefore they must exhaust administrative remedies before bringing this claim.

The Fifth Circuit has held that where "the plaintiffs do not seek the distribution of any benefits, but instead assert fiduciary breach claims," exhaustion of administrative remedies is not required.[63] The question then is whether Plaintiffs' claims are really for additional benefits and not breaches of duty. "Fiduciary claims amount to benefits claims when resolution of the claims rests upon an interpretation and application of an ERISA-regulated plan rather than on an interpretation and application of ERISA. A plaintiff that prevails on a fiduciary claim cannot recover benefits due only to that plaintiff; recovery on fiduciary claims must provide relief to the entire plan."[64]

In their Complaint, Plaintiffs bring claims on behalf of a class of participants and seek disgorgement of profits secured by Defendants. "Although this remedy will undoubtedly benefit [Plaintiffs] and other participants in the Plan, it does not solely benefit the individual participants."[65] Further, Plaintiffs' claims require interpretation of ERISA and

---

[63] Milofsky v. Am. Airlines, Inc., 442 F.3d 311, 313 (5th Cir. 2006).
[64] Haydel v. Dow Chem. Co., No. CV 07-71-JJB, 2007 WL 9706565, at *2 (M.D. La. July 19, 2007); see D'Amico v. CBS Corp., 297 F.3d 287, 291 (3d Cir. 2002); Smith v. Sydnor, 184 F.3d 356, 363 (4th Cir. 1999); Galvan v. SBC Pension Benefit Plan, 204 F. App'x 335, 339 (5th Cir. 2006).
[65] *Smith*, 184 F.3d at 363.

not merely the Plan. Accordingly, Plaintiffs' claims are not disguised claims for additional benefit, and exhaustion is therefore not required.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs may amend their Complaint within 20 days of this Order to the extent that they can remedy the deficiencies identified herein. If Plaintiffs fail to amend their Complaint, this matter will be **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana this 15th day of September, 2025.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**