**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MEGAN ESTAY ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 25-507** |
| **OCHSNER CLINIC FOUNDATION ET AL.** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Second Motion to Dismiss (Doc. 46). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiffs Megan Estay and Francesca Messore, long-time employees of Defendant Ochsner Clinic Foundation ("Ochsner"), bring this action on behalf of a class of current and former Ochsner employees who participated in its retirement 401k Plan ("the Plan"). Plaintiffs allege that Defendant Ochsner, the Plan sponsor, and Defendant Retirement Benefits Committee, the Plan administrator, breached their duties under ERISA when they used Plan forfeitures to reduce Ochsner's matching contribution obligation rather than defray the administrative expenses of the Plan.

Plaintiffs allege that, under the terms of the Plan, Ochsner makes matching contributions to the Plan based on each participant's contributions. If a participant's employment is terminated before he becomes vested in those amounts, those contributions are forfeited to the Plan ("the Forfeitures").

1

According to the Plan, Defendants, as the Plan's fiduciaries, have discretion to use the Forfeitures to either pay administrative expenses of the Plan or reduce future employer matching contributions. While allocating the Forfeitures to defray administrative expenses is in the Plan participants' best interest because it reduces the administrative expenses deducted from their accounts, using it to reduce employer contributions is in the employer's best interest because it saves the employer money. Plaintiffs allege that Defendants always chose to use the Forfeitures to reduce Ochsner's matching contributions. Accordingly, Plaintiffs bring claims under ERISA for breach of the duty of loyalty, breach of the duty of prudence, prohibited transactions under § 1106(a)(1) and (b)(1), and failure to monitor other fiduciaries.

On May 19, 2025, Defendants moved to dismiss all of Plaintiffs' claims, arguing that they failed to state a claim upon which relief can be granted. This Court agreed. In reliance on the recent opinions of several other district courts, the Court held that Plaintiffs could not state a claim where Defendants had acted in compliance with the terms of the Plan and ERISA in making a discretionary choice to allocate Forfeitures to elective contributing employer matches. The Court, noting that ERISA requires only that participants receive their promised benefits, found that Plaintiffs had not alleged that they did not receive the benefits promised under the Plan, that Defendants acted in violation of the Plan, or that the fiduciaries had actually engaged in imprudent conduct.  Finally, the Court found Plaintiffs had not alleged a transaction and therefore had not stated a claim for a prohibited transaction under either

2

section of § 1106. The Court allowed Plaintiffs the opportunity to amend their Complaint to the extent that they could remedy these deficiencies.

Plaintiffs filed their First Amended Complaint on October 21, 2025. On November 21, 2025, Defendants again moved to dismiss Plaintiffs' claims. Defendants argue that Plaintiffs' Amended Complaint fails to address the deficiencies identified by this Court in its prior Order and Reasons. Plaintiffs oppose.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the

---

[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[2] *Id.*

[3] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[4] *Iqbal*, 556 U.S. at 678.

[5] *Id.*

[6] *Lormand*, 565 F.3d at 255–57.

3

complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[7]

## LAW AND ANALYSIS

Defendants have moved to dismiss each of Plaintiffs' claims. This Court will consider each in turn.

### I.    Breach of the Duty of Loyalty

First, Defendants argue that Plaintiffs have not alleged a claim for breach of the duty of loyalty under ERISA. "To state a claim for breach of a fiduciary duty under ERISA, a plaintiff must establish three elements: (1) the plan is governed by ERISA, (2) the defendant is a fiduciary of the plan, and (3) the defendant breached its fiduciary duties under ERISA, resulting in losses to the plan's participants."[8] In accordance with the duty of loyalty, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," "provid[e] benefits to participants and their beneficiaries," and "defray[ ] reasonable expenses of administering the plan."[9] Further, fiduciaries are required to discharge their duties with respect to a plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."[10]

Plaintiffs allege that Defendants breached their duty of loyalty by using the Forfeitures to reduce Ochsner's matching contribution instead of using the

---

[7] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

[8] Spence v. Am. Airlines, Inc., 775 F. Supp. 3d 963, 994 (N.D. Tex. 2025).

[9] 29 U.S.C. § 1104(a)(1)(A).

[10] *Id.* § 1104(a)(1)(D).

Forfeitures to defray the plan's administrative expenses, which would have been in the participants' best interests. They also argue that Defendants chose not to use the full forfeiture amounts and left amounts unused at the end of the year. Plaintiffs argue therefore that the failure to select the alternative that is in the participants' best interest and use the full amounts available to benefit the participants is a breach of loyalty under ERISA.

In the Court's first brush with this issue, it found that the Plan gives Defendants discretion to allocate Forfeitures to reduce the employer's obligation to make discretionary matching contributions "and/or to pay administrative expenses of the Plan"[11] In dismissing Plaintiffs' breach of loyalty claim, the Court relied primarily on three points made by other courts that had already considered similar arguments: (1) ERISA does not require the fiduciary to maximize profits, only to ensure that participants receive their promised benefits; (2) both ERISA and the terms of the plans themselves authorize the use of forfeiture funds for employer matching contributions; and (3) the plaintiffs' theory would effectively require forfeiture funds to be used for administrative expenses and would create an additional benefit to participants not contemplated in the plans.[12] Crucial to this holding was the

---

[11] Doc. 15-3 at 57.

[12] *See e.g.,* McWashington v. Nordstrom, Inc., No. C24-1230 TSZ, 2025 WL 1736765, at \*14 (W.D. Wash. June 23, 2025); Dimou v. Thermo Fisher Sci. Inc., No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at \*9 (S.D. Cal. Sept. 19, 2024); Cain v. Siemens Corp., No. CV 24-8730, 2025 WL 2172684, at \*4 (D.N.J. July 31, 2025); Madrigal v. Kaiser Found. Health Plan, Inc., No. 2:24-CV-05191-MRA-JC, 2025 WL 1299002, at \*5 (C.D. Cal. May 2, 2025); Sievert v. Knight-Swift Transp. Holdings, Inc., 780 F. Supp. 3d 870, 876 (D. Ariz. 2025); Wright v. JPMorgan Chase & Co, No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642, at \*5 (C.D. Cal. June 13, 2025); Middleton v. Amentum Parent Holdings, LLC, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at \*15 (D. Kan. Aug. 5, 2025); Hutchins v. HP Inc., 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024); Barragan v. Honeywell Intern., 2025 WL 2383652 (D.N.J. Aug. 18, 2025);

fact that employer matching contributions are discretionary under the Plan. The Court found that the handful of cases relied upon by Plaintiffs in which the courts allowed similar claims to survive past the motion to dismiss stage were distinguishable on their facts. For example, in *McManus v. Clorox Company*, the employer matching contributions were mandatory under the plan, and the court therefore found that the defendant's decision to use forfeitures toward that obligation resulted in fewer contributions to the plan than the defendant had promised to pay.[13]

In their Amended Complaint, Plaintiffs largely repeat the same allegations the Court earlier found lacking. Only now, Plaintiffs allege that Defendants were "contractually obligated" to provide matching contributions.[14] Despite making this conclusory allegation, however, Plaintiffs do not provide any factual allegations that plausibly support the existence of a contractual obligation on the part of Defendants to make matching contributions. Plaintiffs' Amended Complaint alleges that once Defendants have decided to make employer matching contributions, "the terms of the Plan state that the 'Employer shall have the obligation to pay the contributions' making it an obligation of Ochsner and enforceable by the Plan."[15] But this argument disingenuously misstates the language of the Plan. When the quoted language is put in context, the Plan actually says that "[e]ach Participating Employer shall have the obligation to pay the contributions for its own

---

Gaudalupe Cano v. The Home Depot, Inc., et al., No. 1:24-CV-03793-TRJ, 2025 WL 2589567, at *4 (N.D. Ga. Aug. 26, 2025).

[13] McManus v. Clorox Co., 2025 WL 732087 (N.D. Cal., Mar. 3, 2025); *see also* Buescher v. N. Am. Lighting, Inc., No. 24-CV-2076, 2025 WL 1927503, at *12 (C.D. Ill. June 30, 2025).

[14] Doc. 45 at 31.

[15] *Id.* at 14.

employees and no other corporation shall have such obligation."[16] This provision does not, as Plaintiffs suggest, create a contractual obligation for Defendants to make employer matching contributions.[17] Indeed, the Plan plainly provides that their obligation to match contributions is discretionary. Accordingly, Plaintiffs' conclusory allegations attempting to create an obligation for Defendants to make matching contributions is belied by the plain language of the Plan.

Plaintiffs' attempts to change the nature of Defendants' obligation under the Plan illuminates the deficiencies in their claim. Because the matching contributions are discretionary, "[D]efendants could have used the [F]orfeitures to pay for administrative expenses and opted not to make contributions" in that amount or at all.[18] "In view of this discretion, . . . a fiduciary does not breach its duty of loyalty by discretionarily choosing to apply forfeitures to employer contributions rather than to pay administrative costs."[19] As this Court explained in its first Order and Reasons, "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received

---

[16] Doc. 46-3 at 118.

[17] Plaintiffs also suggest that once Defendants have decided to contribute an employer match, then the obligation becomes enforceable by the Plan against Defendants. But the authority it cites for this proposition states only that a plan has a claim against an employer for "*required* contributions." Doc. 45 at 14, n.6. As discussed, the contributions in the Plan here are not required, but rather, discretionary.

[18] Tillery v. WakeMed Health & Hosps., No. 5:25-CV-408-D, 2026 WL 125784, at *5 (E.D.N.C. Jan. 15, 2026); *see* Polanco v. WPP Grp. USA, Inc., No. 24-CV-9548 (JGK), 2025 WL 3003060, at *7 (S.D.N.Y. Oct. 27, 2025) ("[I]f the defendants had instead used Forfeitures to cover the Plan's administrative expenses, WPP would have been under no obligation to make employer contributions as well.").

[19] Gardner-Keegan v. W.W. Grainger, Inc., No. 1:25-CV-5233, 2026 WL 194772, at *7 (N.D. Ill. Jan. 26, 2026).

their promised benefits."[20] The facts of the Amended Complaint indicate that Defendants complied with the Plan's lawful terms and provided participants with the benefits due. Accordingly, Plaintiffs cannot state a claim for breach of the duty of loyalty. In dismissing Plaintiffs' initial Complaint, this Court noted that a majority of courts had reached the same conclusion.[21] Since that time, the list of courts joining the majority continues to grow.[22] And the cases in which courts have reached a contrary conclusion continue to be largely distinguishable on their facts.[23]

## II.    Breach of the Duty of Prudence

Next, Defendants allege that Plaintiffs have failed to state a claim for a breach of the duty of prudence under ERISA. ERISA fiduciaries are held to the

---

[20] Hutchins v. HP Inc., 767 F. Supp. 3d 924 (N.D. Cali. 2025); *Tillery*, 2026 WL 125784, at *5 ("The duty of loyalty does not require that defendants offer more than" what the plan promised.)

[21] Bozzini v. Ferguson Enters. LLC, No. 22-CV-05667-AMO, 2025 WL 1547617, at *2 (N.D. Cal. May 29, 2025); *McWashington*, 2025 WL 1736765, at *14; *Dimou*, 2024 WL 4508450, at *9; *Cain*, 2025 WL 2172684, at *4; *Madrigal*, 2025 WL 1299002, at *5; *Sievert*, 780 F. Supp. 3d 876; *Wright*, 2025 WL 1683642, at *5; *Middleton*, 2025 WL 2229959, at *15; *Hutchins I*, 737 F. Supp. 3d at 862; *Barragan*, 2025 WL 2383652; *Cano*, 2025 WL 2589567, at *4; Fumich v. Novo Nordisk Inc., No. CV 24-9158 (ZNQ) (JBD), 2025 WL 2399134, at *6 (D.N.J. Aug. 19, 2025).

[22] *Tillery*, 2026 WL 125784, at *4 (and cases cited therein); Brown v. Peco Foods, Inc., No. 3:25-CV-491-TSL-RPM, 2025 WL 3210857, at *5 (S.D. Miss. Nov. 14, 2025) (and cases cited therein); Curtis v. Amazon.com Servs., LLC, No. C24-2164RSM, 2026 WL 124323, at *3 (W.D. Wash. Jan. 16, 2026); del Bosque v. Coca-Cola Sw. Beverages LLC, No. 3:25-CV-01270-X, 2025 WL 3171326, at *5 (N.D. Tex. Nov. 13, 2025); *Polanco*, 2025 WL 3003060, at *4; Brewer v. All. Coal, LLC, No. 24-CV-0406-CVE-SH, 2025 WL 3527171, at *9 (N.D. Okla. Dec. 9, 2025).

[23] *McManus*, 2025 WL 732087 (considering a plan with mandatory employer contributions); Stewart v. Nextera Energy, Inc., No. 23-81314-CIV, 2025 WL 3098085, at *6 (S.D. Fla. Aug. 14, 2025) (considering a plan that provided that remaining forfeitures "shall be applied to reduce Plan administrative expenses" before any amounts are applied to reduce employer contributions); Rodriguez v. Intuit Inc., 744 F. Supp. 3d 935 (N.D. Cal., Feb. 5, 2025) (considering a plan that did not authorize the "specific decisions" made by the defendant with

8

"prudent man" standard of care, which requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[24] "A claim for breach of the duty of prudence will survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed."[25]

Plaintiffs allege, as they did in their Original Complaint, that Defendants failed to undertake any reasoned and impartial decision-making process to determine how to allocate the Forfeitures. Specifically, they emphasize the fact that Defendants consistently chose, year after year, to allocate the Forfeitures to employer matching contributions despite the knowledge that Ochsner had already decided to make employer matching contributions and that there was no risk that Ochsner might be unable to contribute those amounts. They argue that these facts create the inference that Defendants did not undertake a reasoned and impartial decision-making

---

respect to the use of the forfeitures); Heet v. Nat'l Med. Care, Inc., No. CV 25-11644-WGY, 2026 WL 353317, at *4 (D. Mass. Feb. 9, 2026) ("The Fresenius Plan requires forfeited matching contributions to be used to offset other matching contributions under Section 4.4(b) and, once those are paid, the only other permissible, albeit discretionary, use under the Fresenius Plan expands to defrayment of administrative expenses, under Section 7.4."); Gardner-Keegan v. W.W. Grainger, Inc., No. 1:25-CV-5233, 2026 WL 194772, at *8 (N.D. Ill. Jan. 26, 2026) ("[T]he Plan Document does not give discretion as to how the Plan Committee can allocate forfeitures.").

[24] 29 U.S.C. § 1104(a)(1)(B).

[25] Brown v. Peco Foods, Inc., No. 3:25-CV-491-TSL-RPM, 2025 WL 3210857, at *6 (S.D. Miss. Nov. 14, 2025).

process to determine what use of the Forfeitures was in the participants' best interest.

Plaintiffs' claim remains lacking for the same reasons previously discussed by this Court. Although the Amended Complaint contains detailed factual allegations, at bottom Plaintiffs still contend that an inference of imprudence is created when a fiduciary chooses to apply forfeitures to discretionary employer matching contributions over administrative fees. Without more, giving credence to such an inference would create a categorical rule that fiduciaries are always assumed to act imprudently when they apply forfeitures to discretionary employer matching contributions over administrative fees.[26] This Court refuses to assume imprudence simply because Plaintiffs would have preferred a different outcome. "Where, as here, all Plan participants received all of their promised benefits and Plaintiff[s are] unable to point to any circumstances rendering the case unique among the countless ERISA plans permitting the same use of forfeitures, the Court still simply finds Plaintiff[s'] claim implausible."[27] Accordingly, Plaintiffs have failed to allege specific facts stating a claim for a breach of the duty of prudence under ERISA.

Plaintiffs also set forth a breach of the duty of prudence claim based on Defendants' delay in utilizing forfeiture amounts. Plaintiffs contend that Defendants imprudently allowed the Forfeitures to sit unallocated for months instead of applying the amounts to administrative expenses and thereby preventing plan participants from incurring expense deductions from their

---

[26] *Hutchins II*, 767 F. Supp. 3d at 927; *Cain*, 2025 WL 2172684, at *5.
[27] *Cain,* 2025 WL 2172684, at *5.

individual accounts for those expenses. However, as other courts have held, "merely alleging that forfeiture balances existed does not give rise to an inference that defendants breached the duty of prudence."[28] "Plaintiffs provide no reason to think that the mere existence of a forfeiture balance at year's end necessarily implies an unreasonable delay."[29] Indeed, the Plan expressly provides that the Forfeitures are to be "held in the Trust and will continue to share in the allocation of earnings" until a decision is made on whether to allocate them to employer matching contributions or administrative expenses.[30] Accordingly, Plaintiffs fail to state a breach of the duty of prudence claim on this theory either.

## III.    Prohibited Transactions

Next, Defendants argue that Plaintiffs cannot succeed on their claims that the Forfeiture allocations were prohibited transactions under 29 U.S.C. § 1106(a)(1) or (b)(1). Section 1106 "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'"[31] Section 1106(a) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . sale or exchange . . . of any property between the plan and a party in interest." Plaintiffs seeking to state a claim under § 1106(a)(1) "must plausibly allege that a plan fiduciary engaged in a transaction

---

[28] *Tillery*, 2026 WL 125784, at *7.

[29] Donelson v. Meijer, Inc., No. 1:25-CV-1156, 2025 WL 3754241, at *5 (W.D. Mich. Dec. 29, 2025).

[30] Doc. 46-3 at 57.

[31] Cunningham v. Cornell Univ., 145 S. Ct. 1020, 1025 (2025).

proscribed therein, no more, no less."[32] Section 1106(b) prohibits self-dealing. This Court previously dismissed these claims, holding that Plaintiffs had not alleged a "transaction" within the meaning of § 1106(a) or (b).[33] Instead, the Court found that the use of the Forfeitures toward employer matching contributions was merely a reallocation of Plan assets within the Plan.

In their Amended Complaint, Plaintiffs now allege that the "transactions" at issue are the "tens of thousands of transactions extracting money from the accounts of Plan participants to pay over $8 million for Plan Administrative Expenses to the Plan's third-party service providers that should have been defrayed fully or in part by Forfeited Plan Assets."[34] They also allege that the Plan engaged in transactions with Ochsner, the Plan sponsor and a party-in-interest, when it coordinated with Ochsner to calculate how much Ochsner could reduce its employer matching contribution payment by offsetting the Forfeitures.

The Court finds that these allegations still fail to state a claim under § 1106. First, the fiduciary did not "cause the plan to engage in a transaction" as required under § 1106(a) by choosing to pay the administrative fees out of participant accounts rather than the Forfeitures. Once Ochsner, in its settlor capacity, decides to charge administrative expenses to the Plan, these payments are paid from Plan assets and would have been withdrawn from the

---

[32] *Id.*

[33] Plaintiffs reassert their argument that § 1106(b) does not require the allegation of a "transaction." The Court previously rejected this argument and need not rehash that issue here. Doc. 42.

[34] Doc. 45 at 34.

12

Plan regardless of how Defendants chose to allocate the Forfeitures.[35] In addition, the payment of administrative fees incurred by the Plan out of participant accounts surely does not implicate the sort of self-dealing contemplated by § 1106(b).[36]

Second, Plaintiffs' allegations that Defendants "coordinated" with Ochsner and "engaged in calculations" with Ochsner do not allege a "transaction" within the meaning of § 1106. There is no allegation that any amount left the Plan. Instead, the movement of funds from the Forfeiture account to be used for employer matching contributions is an intra-plan transfer. "[T]he intra-plan reallocation of forfeitures to cover employer contributions is a 'payment of benefits,' [and therefore] it is not a transaction within the meaning of § 1106."[37] Accordingly, Plaintiffs again fail to state a claim under § 1106.

## IV.    Failure to Monitor Other Fiduciaries

Finally, Plaintiffs allege that Ochsner failed to monitor the fiduciaries responsible for allocating the Forfeitures. This claim is derivative of the other claims and therefore fails as well.[38] Accordingly, all of Plaintiffs' claims are

---

[35] Doc. 46-3 at 101 ("Expenses of the Plan and Trust . . . may be paid directly by the Participating Employer or, at the election of the Participating Employer, such expenses may be paid from the assets of the Trust Fund.").

[36] 29 U.S.C. § 1106(b)(1) ("[A] fiduciary with respect to a plan shall not—deal with the assets of the plan in his own interest or for his own account.").

[37] Polanco, 2025 WL 3003060, at *10; See Lockheed Corp. v. Spink, 517 U.S. 882, 892–93 (1996) ("[T]he payment of benefits is in fact not a 'transaction' in the sense that Congress used that term in § [1106](a).").

[38] Dimou, 2024 WL 4508450, at *11.

13

dismissed. Having already granted Plaintiffs an opportunity to amend their Complaint, no further leave will be given.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 23rd day of March, 2026.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

14